KINDRA DENEAU (State Bar No. 024156)
7135 East Camelback Road, Suite 230
Scottsdale, Arizona 85251
Telephone: (480) 306-5977
Facsimile: (602) 626-3504
E-mail: kdeneau@lemberglaw.com

*Of Counsel to*
Lemberg & Associates LLC
A Connecticut Law Firm
1100 Summer Street
Stamford, CT  06905
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

Attorneys for Plaintiffs,
Christopher Gilbert and Jacqueline Guess

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Gilbert and Jacqueline Guess, | Case No.: |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| Cawley & Bergmann, LLP; and DOES 1-10, inclusive, | |
| Defendants. | |

For this Complaint, the Plaintiffs, Christopher Gilbert and Jacqueline Guess, by undersigned counsel, state as follows:

## JURISDICTION

1. This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and the invasions of Plaintiffs' personal privacy by the Defendants and its agents in their illegal efforts to collect a consumer debt.

2. Original and supplemental jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants transact business here and a substantial portion of the acts giving rise to this action occurred here.

## PARTIES

4. The Plaintiffs, Christopher Gilbert ("Christopher") and Jacqueline Guess ("Jacqueline"), are adult individuals residing in Flagstaff, Arizona, and are each "consumers" as the term is defined by 15 U.S.C. § 1692a(3).

5. The Defendant, Cawley & Bergmann, LLP (hereafter "C&B"), is a company with an address of 2200 Fletcher Avenue 5th Floor, Fort Lee, New Jersey 07024, operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

6. Does 1-10 (the "Collectors") are individual collectors employed by C&B and whose identities are currently unknown to the Plaintiffs. One or more of the

Collectors may be joined as parties once their identities are disclosed through discovery.

7. C&B at all times acted by and through one or more of the Collectors.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

**A.    The Alleged Debt**

8. The Plaintiff Christopher allegedly incurred a financial obligation (the "Debt") to an original creditor (the "Creditor").

9. The alleged Debt arose from services provided by the Creditor which were primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

10. The alleged Debt was purchased, assigned or transferred to C&B for collection, or C&B was employed by the Creditor to collect the alleged Debt.

11. The Defendants attempted to collect the alleged Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

**B.    C&B Engages in Harassment and Abusive Tactics**

12. Within the last year, C&B contacted and/or communicated with Plaintiffs in an attempt to collect the alleged Debt.

13. Prior to May 9, 2012, Christopher received numerous calls from an unknown, unidentified number.

3

14. On or about May 9, 2012, C&B called Christopher at his place of employment and had him publicly paged to answer the call in an attempt to collect the alleged Debt.

15. Christopher works as a supervising operator in a manufacturing cleaning room and was taken off guard. Despite the obvious intrusion and inconvenience of the call, Christopher offered to pay C&B $100 a month towards the alleged Debt.

16. C&B belittled Christopher for offering such a small amount of money.

17. C&B insisted that Christopher pay it over the phone. Christopher explained that he had never received anything from C&B in writing, and that he did not feel comfortable providing it with his bank account information. Instead, Christopher stated that he would gladly send a payment each month if C&B sent him a monthly bill in writing.

18. C&B repeatedly told Christopher that if he did not agree to pay the alleged Debt over the telephone then it would "send it [the alleged Debt] to the attorneys" and that "the attorneys will take care of it [the alleged Debt]."

19. Christopher felt threatened by these statements, and had to end the call because he was at work.

20. The next day on or about May 10, 2012, Christopher called C&B back and informed them to never call his work again, and that he would call them back himself the next day.

4

21. Then, Christopher called back the next day on or about May 11, 2012 about the alleged Debt.

22. Initially, Christopher spoke to a representative who repeated the threat that the attorney would handle things from here implying Christopher was in trouble with the law if Christopher did not comply with C&B's demands for payment over the phone while sending him zero documentation.

23. Christopher asked for a supervisor. The C&B supervisor yelled at him and became extremely abusive. Christopher tried to explain that he had dealt with an identity theft issue before and that it is important to him to have a paper trail from C&B about the alleged Debt.

24. The C&B supervisor yelled and said "looks like you're never going to get this done" and made fun of Christopher's prior offer to make $100.00 a month payments.

25. Christopher was holding the phone away from his ear because of how loud the C&B supervisor had become, when his fiancé Jacqueline picked up the phone to ask the supervisor to calm down and talk in a more professional tone of voice.

26. The C&B supervisor continued to yell at her beginning with exclaiming, "Who the hell are you?!"

27. C&B used rude and abusive language when speaking with Plaintiffs.

5

28.  C&B ridiculed Christopher for not being able to pay the alleged Debt and threatened to send the alleged Debt to "the attorneys" implying a lawsuit was imminent.

29.  C&B was so aggressive and abusive with Plaintiffs that Plaintiffs were physically shaking after speaking with C&B.

30.  To date, C&B has failed to send Christopher a "30-Day Validation Notice."

31.  C&B's repeated threats to send the Debt "to the attorneys" overshadows Plaintiffs' right under Federal and State laws to dispute the validity of the Debt or request validation of the Debt within the following thirty days.

### C.  Plaintiffs Suffered Actual Damages

32.  The Plaintiffs have suffered and continue to suffer actual damages as a result of the Defendants' unlawful conduct.

33.  As a direct consequence of the Defendants' acts, practices and conduct, the Plaintiffs suffered and continue to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment.

34.  The Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

# COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692, et seq.

35. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

36. The Defendants engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiffs in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d.

37. The Defendants used profane and abusive language when speaking with the consumer, in violation of 15 U.S.C. § 1692d(2).

38. The Defendants misrepresented the character, amount and/or legal status of the debt, in violation of 15 U.S.C. § 1692e(2).

39. The Defendants threatened to take legal action, without actually intending to do so, in violation of 15 U.S.C. § 1692e(5).

40. The Defendants failed to send Christopher a validation notice stating the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

41. The Defendants failed to send Christopher a validation notice stating the name of the original creditor to whom the debt was owed, in violation of 15 U.S.C. § 1692g(a)(2).

42. The Defendants failed to send Christopher a validation notice stating the Plaintiff's right to dispute the debt within thirty days, in violation of 15 U.S.C. § 1692g(a)(3).

43. The Defendants failed to send Christopher a validation notice informing the Plaintiff of a right to have verification and judgment mailed to the Plaintiff, in violation of 15 U.S.C. § 1692g(a)(4).

44. The Defendants failed to send Christopher a validation notice stating the Plaintiff's right to request the name and address of the original creditor, in violation of 15 U.S.C. § 1692g(a)(5).

45. The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions.

46. The Plaintiffs are entitled to damages as a result of the Defendants' violations.

## **COUNT II**

### **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

47. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

48. The acts, practices and conduct engaged in by the Defendants vis-à-vis the Plaintiffs was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

8

49. The foregoing conduct constitutes the tort of intentional infliction of emotional distress under the laws of the State of Arizona.

50. As a result of the Defendants' intentional infliction of emotional distress, the Plaintiffs are entitled to actual damages in an amount to be determined at trial from Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs prays that judgment be entered against the Defendants:

    A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendants;

    B. Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against the Defendants;

    C. Costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendants;

    D. Actual damages from the Defendants for the all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent FDCPA violations in an amount to be determined at trial for the Plaintiffs;

    E. Punitive damages;

F. For Plaintiffs' statutory costs in relation to Arizona claim(s) pursuant to A.R.S. § 12-341; and

G. Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  May 30, 2012						LEMBERG & ASSOCIATES, LLC


By:  */s/  Kindra Deneau*
Kindra Deneau

Attorney for Plaintiffs
Christopher Gilbert and Jacqueline Guess